UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>ROBERT RHODES,<br><br>                          Defendant. | No. 18-cr-373 (RJS)<br>ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

      Before the Court is Defendant Robert Rhodes's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), made in light of his medical needs and the conditions in prison due to the COVID-19 pandemic.  (Doc. No. 755 ("Def. Mot."); *see also* Doc. Nos. 705, 736, 761, 762, 774.)  The government opposes that motion.  (Doc. No. 766 ("Gov't Opp'n").)  For the reasons set forth below, Rhodes's motion is DENIED.

## I.     Background

      Rhodes's criminal history began in 2008, when, at the age of 23, he pled guilty to criminal possession of marijuana.  (Presentence Investigation Report ("PSR") ¶ 57.)  Over the next six years, Rhodes was convicted of another eight crimes.  (*Id.* ¶¶ 58–65.)  Most of those convictions were related to criminal possession of controlled substances (usually marijuana or crack cocaine) or criminal sale of marijuana.  But one, an assault conviction in 2014, involved violent conduct.  Specifically, Rhodes provided a co-defendant with a gun and pointed out a victim, whom the co-defendant proceeded to shoot several times.  (*Id.* ¶ 65.)  It was while released on parole following this assault that Rhodes became involved in the current offense.  (*Id.* ¶¶ 65, 67.)

For an eleven-week period, beginning on March 18, 2018, Rhodes was a member of a drug trafficking organization known as the "Boss Crew DTO," which operated in the Bedford Stuyvesant neighborhood of Brooklyn, New York. (*Id.* ¶¶ 12, 25.) During that time, Rhodes was responsible for the distribution of 155 grams of crack cocaine. (*Id.* ¶ 36.) His involvement in the conspiracy ended on June 6, 2018, when he was arrested along with several other members of the Boss Crew. (*Id.* ¶ 38.)

On April 9, 2019, Rhodes pleaded guilty, pursuant to a plea agreement with the government, to one count of conspiring to distribute crack cocaine in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. (Doc. No. 268; *see also* PSR ¶ 6.) According to the plea agreement, the parties stipulated to a U.S. Sentencing Guidelines range of 70 to 87 months' imprisonment. (Doc. No. 395 at 2.) The PSR likewise concluded that the advisory Guidelines range was 70 to 87 months' imprisonment (PSR ¶ 114), and the U.S. Probation Office recommended a below-Guidelines sentence of 60 months (*id.* at pg. 28.)

On August 5, 2019, the Court sentenced Rhodes below even that amount, concluding that a 54-month term of incarceration was sufficient but not greater than necessary to accomplish the goals of sentencing as set forth in 18 U.S.C. § 3553(a). (Doc. No. 412 at 2; Doc. No. 478 ("Sentencing Tr.") at 40–41, 43.) The Court pointed to several mitigating circumstances in selecting this sentence, including (i) the short duration of Rhodes's involvement in the conspiracy, (ii) the fact that Rhodes continued to maintain a full-time job up until the date of his arrest, (iii) Rhodes's own drug addiction, and (iv) the conditions of confinement that Rhodes endured during an extended blackout at the Metropolitan Detention Center in Brooklyn, which were exacerbated by his medical issues, specifically, a recurrent anorectal abscess. (Sentencing Tr. at 22, 39–40.) But the Court also made clear that Rhodes's crime was incredibly serious, and that

Rhodes's lengthy criminal history indicated that he had missed numerous opportunities to "reflect and say I'm not going to do this anymore." (*Id.* at 37–38.) All told, the Court concluded that a below-Guidelines sentence of 54 months was appropriate, but that anything less "would send the wrong message." (*Id.* at 41.)

Following sentencing, Rhodes was designated to serve his sentence at FCI Schuylkill. (Def. Mot. at 3.) Unfortunately, Rhodes has accumulated at least eight disciplinary infractions since that time, including one for "threatening bodily harm" to another.[1] (Doc. No. 766-1 at 1–3.) As a result of his disciplinary problems, Rhodes was eventually transferred to USP Canaan in August 2020, where he is currently being held. (Gov't Opp'n at 3.) Rhodes's projected release date is March 16, 2022. (*Id.*)

On July 20, 2020, the Court received a *pro se* letter from Rhodes, requesting compassionate release under 18 U.S.C. § 3582. (Doc. No. 705.) Thereafter, the Court re-appointed Bennett Epstein and Sarah Sacks, who had previously represented Rhodes in this case, to assist Rhodes with his motion. (Doc. Nos. 706, 710.) Following their appointment, Rhodes's counsel informed the Court that they had filed a motion for compassionate release with the Warden of FCI Schuylkill (where Rhodes was housed at the time) to satisfy the exhaustion requirement found in § 3582(c)(1)(A). Doc. No. 710; *see generally United States v. Ogarro*, No. 18-cr-373 (RJS), 2020 WL 1876300 (S.D.N.Y. Apr. 14, 2020). Then, on November 5, 2020, the Court received another *pro se* letter from Rhodes, this time asserting that he was not receiving proper medical attention while in custody at USP Canaan, in violation of his Eighth Amendment rights. (Doc. No. 736.) Rhodes's counsel informed the Court that they intended to address these arguments in a

---

[1] These eight infractions followed three prior disciplinary infractions incurred before Rhodes's sentencing. (Doc. No. 766-1 at 3–4.)

forthcoming motion for compassionate release and that the Court therefore need not construe the letter as a *pro se* request for relief.  (*Id.*)

As promised, on November 30, 2020, Rhodes submitted a counseled motion for compassionate release, which incorporated by reference Rhodes's two prior *pro se* letters.  (Doc. No. 755.)  The thrust of Rhodes's motion is that an early release from his period of confinement is appropriate because he has received insufficient medical care from the Bureau of Prisons ("BOP").  Specifically, Rhodes argues that he has continued to suffer from "a persistent recurrent anorectal abscess," and that he has been waiting to receive surgery to fix the problem "for well over two years."  (Def. Mot. at 3 (internal quotation marks omitted).)  In addition, Rhodes suggests that the COVID-19 pandemic supplies another reason to release him early.  (*Id.* at 4–5.)

Less than two weeks later, the Court received yet another *pro se* submission from Rhodes, again arguing that he was receiving insufficient medical care while in BOP custody, in violation of his Eighth Amendment rights.  (Doc. No. 761.)  Shortly thereafter, Rhodes's counsel informed the Court that it may "construe Mr. Rhodes'[s] *pro se* letter . . . as part of his pending motion for compassionate release."  (Doc. No. 762.)

On December 21, 2020, the government filed its opposition to Rhodes's motion for compassionate release.  (Doc. No. 766.)  The government principally argues that the BOP is offering Rhodes appropriate medical care, and that neither his abscess nor COVID-19 warrants compassionate release.  (Gov't Opp'n at 4–6.)  And, in any event, the government maintains that the various sentencing factors embodied in § 3553(a) weigh strongly against releasing Rhodes.  (*Id.* at 7.)  Rhodes has since filed a reply in further support of his motion and in response to the government's opposition.  (Doc. No. 774.)

## II.    Legal Standard

"The Court 'may not modify a term of imprisonment once it has been imposed except pursuant to statute.'" *United States v. Felix*, No. 12-cr-322 (RJS), 2020 WL 4505622, at *1 (S.D.N.Y. Aug. 4, 2020) (quoting *United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020)). "Section 3582(c)(1)(A) provides one such exception, often referred to as 'compassionate release.'" *Id.* "Through that provision, the Court may 'reduce' a defendant's sentence where 'extraordinary and compelling reasons warrant such a reduction,' and such relief would be consistent with both the factors in 18 U.S.C. § 3553(a) and 'applicable policy statements issued by the Sentencing Commission.'"[2]  *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).  Importantly, it is the defendant's burden to show that he is eligible for and deserving of compassionate release. *See United States v. Musa*, --- F. Supp. 3d ---, 2020 WL 6873506, at *4 (S.D.N.Y. 2020).

## III.    Discussion

Rhodes's primary argument that "extraordinary and compelling reasons" exist is that he is receiving insufficient medical care for his recuring anorectal abscess. (Def. Mot. at 3–4, 6.) The Court disagrees. To start, the BOP has shown that it is capable of managing Rhodes's condition. In 2018, after Rhodes developed an infection, the BOP successfully provided him with two courses of antibiotics. (Gov't Opp'n at 5.) Since then, the BOP has routinely providing Rhodes with medications, ointments, and gauze, and he has developed no other infections. (*Id.* at 4–5.)

Likewise, the fact that Rhodes has not yet received surgery to permanently fix his abscess is not reason to release him early. Indeed, it appears that medical staff at USP Canaan have either

---

[2] Where, as here, the compassionate release motion was made by the defendant himself, rather than by the Bureau of Prisons, U.S.S.G. § 1B1.13 is not an "applicable" policy statement. *See United States v. Brooker* (*Zullo*), 976 F.3d 228, 235–37 (2d Cir. 2020). As a result, the Court has significant discretion to identify what constitutes "extraordinary and compelling reasons." *See id.*

scheduled certain pre-operative procedures or have offered to schedule those procedures but were turned down by Rhodes. (Gov't Opp'n at 5; Doc. No. 774 at 2.) In either case, the record demonstrates that the BOP is actively engaged in getting Rhodes the very medical relief that forms the core of his motion. What's more, given the BOP's ability to successfully manage Rhodes's condition, Rhodes has not demonstrated that his need to receive corrective surgery is so immediate as to require his release from incarceration. In fact, Rhodes's medical consultant, Dr. Adam Klipfel, states only that Rhodes should have the surgery "sooner than later," and admits that the most dire consequence of delaying Rhodes's surgery, serious infection, "is not a common result." (Doc. No. 755-2 at 1.) Accordingly, while Rhodes may be frustrated at the BOP's speed in scheduling his surgery, Rhodes has failed to demonstrate that the BOP's care is so deficient or that his medical needs are so urgent as to constitute "extraordinary and compelling reasons" demanding early release.[3]

Likewise, Rhodes's reliance on the ongoing COVID-19 pandemic is insufficient to make this threshold showing. (Def. Mot. at 4–5.) As the government points out, Rhodes is a 35-year-old man who does not claim to have any condition that might render him at increased risk for serious complications if he were to become infected with COVID-19. (Gov't Opp'n at 6.) Rhodes's arguments thus boil down to an assertion that he should be released simply because there is a COVID-19 outbreak nationwide. But, as numerous courts have recognized, "the pandemic itself – without more – does not present extraordinary and compelling circumstances warranting a compassionate release." *Musa*, 2020 WL 6873506, at *8 (internal quotation marks omitted); *accord United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (explaining that "the mere existence

---

[3] Though one of Rhodes's *pro se* letters also points to his prior diagnoses with Bell's palsy and Lyme disease as reasons for his early release (Doc. No. 705 at 2), the government indicates that Rhodes has since tested negative for Lyme disease and that his Bell's palsy is in remission (Gov't Opp'n at 6 n.4). Rhodes has not disputed those assertions. Accordingly, neither condition is an "extraordinary and compelling reason" within the meaning of § 3582(c)(1)(A).

6

of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

As a result, the Court concludes that Rhodes's medical needs and the risk posed by COVID-19 do not constitute "extraordinary and compelling reasons" warranting early release from custody. But even if they did, Rhodes's motion would still fail.

As the text of § 3582(c)(1)(A) makes clear, even if "extraordinary and compelling reasons" exist, a court cannot grant compassionate release without first considering the sentencing objectives embodied in § 3553(a). *See United States v. Broadus*, No. 17-cr-787 (RJS), 2020 WL 3001040, at *3 (S.D.N.Y. June 4, 2020). "In this context, the § 3553(a) factors provide a counterweight to 'extraordinary and compelling reasons' calling for a reduction of the defendant's sentence." *Musa*, 2020 WL 6873506, at *5. "Put differently, the § 3553(a) factors are assessed to determine whether they 'outweigh the extraordinary and compelling reasons warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence.'" *Id.* (quoting *United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

Here, the section 3553(a) factors weigh strongly against granting Rhodes compassionate release. In particular, (i) "the nature and circumstances of the offense," (ii) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and (iii) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," all outweigh any other facts that might otherwise support Rhodes's motion.[4]  18 U.S.C. § 3553(a).  That is reason alone to deny Rhodes's motion. *See*

---

[4] Though certain of the other § 3553(a) factors are either neutral or slightly favor Rhodes's release – for example, "the need for the sentence imposed . . . to provide [Rhodes] with needed . . . medical care," 18 U.S.C. § 3553(a)(2) – they are far outweighed by the other considerations discussed herein.

*United States v. Rosa*, No. 11-cr-569 (PAC), 2020 WL 6075527, at *3 (S.D.N.Y. Oct. 15, 2020) (denying compassionate release despite the presence of "extraordinary and compelling reasons" because the § 3553(a) factors did not favor such relief); *United States v. Walter*, No. 18-cr-834 (PAE), 2020 WL 1892063, at *2–3 (S.D.N.Y Apr. 16, 2020) (same); *United States v. Butler*, No. 19-cr-834 (PAE), 2020 WL 1689778, at *2–3 (S.D.N.Y. Apr. 7, 2020) (same).

Indeed, having considered the record as a whole, the Court concludes that its reasons for imposing a sentence of 54 months' imprisonment are just as applicable today as they were in 2019 (Sentencing Tr. at 36–41), and that a reduction in sentence is therefore inappropriate, *see United States v. Prelaj*, No. 16-cr-55 (RJS), 2020 WL 3642029, at *3 (S.D.N.Y. July 6, 2020). Of particular concern is the fact that Rhodes's "prior term of incarceration did not deter him from engaging in the instant criminal conduct." *See Broadus*, 2020 WL 3001040, at *3. In addition, as the Court explained at Rhodes's sentencing, anything less than 54 months' imprisonment would "send the wrong message." (Sentencing Tr. at 41.) This is especially true here given Rhodes's numerous disciplinary infractions while incarcerated, many of which he received this year. *See Musa*, 2020 WL 6873506, at *7–8.

Accordingly, even assuming that Rhodes has demonstrated that "extraordinary and compelling reasons" favor his release – and the Court concludes that he has not – such relief would be inconsistent with the objectives of sentencing set forth in 18 U.S.C. § 3553(a). As a result, compassionate release is not warranted. *See Ebbers*, 432 F. Supp. 3d at 431.

### IV. Conclusion

For all these reasons, Rhodes's motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to terminate the motions pending at document numbers 755 and 774.

SO ORDERED.

Dated:     January 12, 2021
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation